**Francis S. BROWNE, Appellant,**

v.

**W. Carroll BROOKE, Emma Smallzel Wacker, and Eleanor N. Jenkins, Appellees.**

No. 12792.

United States Court of Appeals District of Columbia Circuit.

Argued April 4, 1956.

Decided June 14, 1956.

Petition for Rehearing In Banc Denied July 16, 1956.

---

Mr. Charles H. Quimby, Washington, D. C., for appellant.

Mr. Louis M. Denit, Washington, D. C., with whom Messrs. Thomas S. Jackson, Martin R. Fain and Richard A. Bishop, Washington, D. C., were on the brief, for appellees.

Before BAZELON, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

In the District Court a trial was had before a jury on issues framed as to the validity of an instrument dated November 13, 1952, offered by Francis S. Browne, appellant, as the last will and testament of Mildred Nyman, deceased. A caveat had been filed by W. Carroll Brooke, an appellee, cousin of the decedent and a devisee and legatee named in an earlier will. Eleanor N. Jenkins, niece of deceased, and Emma S. Wacker, another relative and devisee and legatee under the earlier instrument, both of whom are also appellees, joined in the caveat. The jury returned a verdict that decedent at the time of the making of the purported will of November 13, 1952, was not of sound and disposing mind and capable of executing a valid deed or contract. The verdict also included other special findings supporting the caveat but these need not be considered; for if the verdict that decedent was of unsound mind is not impaired by any error, as we hold to be the case, then the order denying probate, which is the order appealed from, should be affirmed.

The only serious question about the validity of the jury's verdict of unsoundness of mind has to do with the admission in evidence of the testimony of Dr. Winfred Overholser to the effect that decedent was of unsound mind when he examined her in February, 1952. The purpose of the examination was to enable the doctor to prepare a report on Miss Nyman's mental condition in connection with proceedings to appoint a conservator for her. The question is whether the doctor's testimony was privileged and therefore inadmissible unless the privilege was waived. Since we find for the reason now to be stated that the testimony was not privileged we do not reach the question of waiver. We think it was not privileged because under § 14–

308, D.C.Code (1951), the doctor-patient privilege in this jurisdiction extends only to information the physician acquires "in attending a patient in a professional capacity." This does not include information obtained merely by an examination. Taylor v. United States, 95 U.S.App.D.C. 373, 222 F.2d 398. We assume that the person examined, if capable of forming a judgment on the subject, must understand that the physician is not attending or treating him.[1] If not capable of forming such a judgment the question of the physician's status must be determined objectively.

■ Here the trial judge made preliminary inquiries to ascertain if Dr. Overholser had attended and treated the decedent or if she could have so believed, so as to give rise to the privilege. We reproduce in the margin a portion of the relevant parts of the record which shows the court's attention to this problem.[2] Upon the basis of his inquiries as to the possible professional relationship of the witness to the decedent, and the answers of the witness, the learned trial judge admitted the opinion evidence. We cannot say from the facts thus developed that he erred in ruling that the testimony was not subject to the privilege.

Finding no error in this or in other respect, the order is

Affirmed.

BAZELON, Circuit Judge (dissenting).

I think the District Court erred in admitting the testimony of the psychiatrist that the decedent was mentally incompetent to execute a will.

The circumstances under which the witness examined the decedent were these: Upon being retained by a bank to give an opinion as to her mental competence to transact business, he sought and obtained the permission of her personal physician to visit her at the nursing home where she was confined. He made the visit and was introduced to her as a doctor by one of the nurses. He examined her in the same manner as he would have examined one of his own patients for a similar purpose. Decedent was not specifically informed by anyone whether the doctor was there to treat her, examine her or pay a social visit.

The statute which renders a doctor's testimony incompetent,[1] "very broad" though it is,[2] does not bar from evidence what the doctor has learned from an examination avowedly made for testimonial rather than therapeutic purposes.[3] The

---

1. See Smart v. Kansas City, 208 Mo. 162, 105 S.W. 709, 716–718, 14 L.R.A.,N.S., 565 and cases cited; Weitz v. Mound City Ry., 53 Mo.App. 39. Of contrary import, see In re Williams' Estate, 186 Wis. 160, 202 N.W. 314.

2. "By The Court: "Q. I take it from what you have already said that you were undertaking to form an opinion to express to somebody else respecting the condition that you observed this person to be in. A. That is correct, Your Honor.

"Q. That was definitely your understanding of the situation. Now, was there anything said or done to you that indicated that Miss Nyman regarded you as her physician and she as your patient? A. Oh, no. I am not at all sure that she even knew I was a physician.

"Q. I heard you say that. A. Yes. And she said nothing to me—she asked me no questions, for example, as to what she ought to do about herself or her condition at all. She asked for no advice.

"Q. Well, you are perfectly clear in your own mind, at least, then, that there was not the normal patient-physician relationship? A. I am perfectly clear on that, Your Honor, yes, sir.

"Q. And so far as you could observe she was under no misapprehension that there was that relationship? A. I feel very safe in saying that she had no such idea.

"The Court: I shall admit the Doctor's testimony."

1. D.C.Code § 14–308 (1951).

2. Sher v. DeHaven, 1952, 91 U.S.App. D.C. 257, 260, 199 F.2d 777, 780, 36 A.L.R.2d 937, certiorari denied, 1953, 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363.

3. Taylor v. United States, 1955, 95 U.S. App.D.C. 373, 377, 222 F.2d 398, 402; Annot., 1937, 107 A.L.R. 1495.

policy of the statute is to encourage between doctor and patient the free communication which is essential for proper treatment of illness, by assuring the patient that his disclosures will be kept secret. This policy is "particularly clear and strong" where mental patients are concerned.[4] Where the "patient" knows that the doctor is there to obtain evidence rather than to give treatment, there is no inducement to convey confidences and, consequently, no need to protect his communications against disclosure.

Here the psychiatrist's purpose was unquestionably testimonial, but it does not appear that the decedent was aware of that fact. Her normal assumption would have been that the doctor who was examining her was doing so qua doctor, not qua bank investigator. To admit the doctor's testimony in these circumstances would make the patient's rights dependent on the doctor's intentions. The statute, however, is designed for the patient's protection. Her frame of mind, therefore, rather than the doctor's, should determine whether the statute applies.[5] Unless it appears that she submitted to examination with knowledge that the doctor might broadcast his findings, her confidences should be respected. To make the testimony competent, it must be found from the record not only that the purpose of the examination was testimonial, but also that such purpose was clearly announced to the person examined or her legal representative. No such finding being possible here, the testimony should have been excluded.

Although there was other evidence that decedent was mentally incompetent to execute the will, it cannot be said that the inadmissible testimony was merely cumu-

lative and without prejudicial effect upon the jury. I would therefore reverse and remand for a new trial.

---

4. Taylor v. United States, 95 U.S.App.D.C. at page 376, 222 F.2d at page 401, quoting Guttmacher and Weihofen, Psychiatry and the Law (1952) 272: " 'The psychiatric patient confides more utterly than anyone else in the world. * * * It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from

what they say—may be revealed to the whole world from a witness stand.' "

5. The witness' opinion that decedent did not think there was a patient-physician relationship is, in my judgment, not sufficient, in the light of the circumstances, to support a finding that such was in fact her state of mind.